**Sonsearaharay POLK,
Plaintiff-Appellee,**

v.

**YELLOW FREIGHT SYSTEM, INC., an Indiana Corporation,
Defendant-Appellant.**

No. 84–1596.

United States Court of Appeals,
Sixth Circuit.

Argued July 22, 1986.

Decided Sept. 11, 1986.

Rehearing and Rehearing En Banc
Denied Nov. 10, 1986.

Geoffrey L. Smith—Lead Counsel Detroit, Mich., Frederick R. Damm, Ronald E. Sandhaus argued, Yellow Freight System, Inc., Overland Park, Kan., for defendant-appellant.

Michael Pitt argued, Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge; and KENNEDY and BOGGS, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant-appellant, Yellow Freight System, Inc. ("defendant"), appeals the judgment of the United States District Court for the Eastern District of Michigan granting plaintiff-appellee, Sonsearaharay Polk, recovery for her discharge from defendant's employ. The jury found that plaintiff was discharged without "just cause," that she was discharged in retaliation for her assertion of certain rights granted to her under Michigan law, and that she suffered emotional distress as a result of defendant's intentionally outrageous conduct. For the reasons set forth below, we reverse in part and remand the case for a new trial on plaintiff's claim that defendant dis-

charged her because she visited the Michigan Civil Rights Commission ("MCRC").

Defendant is a regulated common carrier of general commodities by motor vehicle. Defendant, an Indiana corporation, has its corporate headquarters in Overland Park, Kansas, and operates many terminal facilities throughout the United States. Plaintiff is a black female. She was employed at defendant's Melvindale, Michigan, terminal in various clerical capacities from June 28, 1972, until May 10, 1979, when she was suspended for insubordination. Plaintiff was discharged a few days later.

Sheila Evans, a white female, had been promoted to office manager on October 2, 1978, a position which gave her direct supervisory authority over plaintiff. Plaintiff was disciplined shortly after Evans' promotion for her refusal to comply with an instruction from Evans. A memorandum regarding the incident was placed in plaintiff's personnel file. The next disciplinary incident involving plaintiff and Evans occurred on May 3, 1979. On that date, Evans reprimanded plaintiff for selling raffle tickets to co-workers during work hours, and placed a memorandum in plaintiff's personnel file. On May 4, 1979, plaintiff was disciplined by Ivan Waterbury, the terminal manager, for discussing internal company business with a customer. On May 8, 1979, plaintiff visited the MCRC. Her charge of discrimination against defendant was filed with the MCRC some time later, approximately three weeks after her discharge. On May 9, 1979, plaintiff requested access to her personnel file in accordance with the Bullard-Plawecki Employee Right-to-Know Act, Mich.Comp. Laws Ann. § 423.501 *et seq.;* she was given access on May 23, 1979. On May 10, 1979, Evans noticed plaintiff typing something at her desk that did not appear to be work-related. Evans asked to see the document and plaintiff refused to show it to her. An argument ensued and Waterbury came over to investigate. He also asked to see the paper and plaintiff refused to show it to him. He informed plaintiff that she was suspended and that he was going to recommend that she be discharged for in-

subordination. The Employee Review Committee reviewed the matter as required by company policy and authorized plaintiff's discharge effective May 17, 1979.

On May 19, 1979, plaintiff filed for unemployment benefits with the Michigan Employment Security Commission ("MESC"). On June 18, 1979, the MESC disqualified her for full unemployment benefits on the grounds that her discharge was for "misconduct." The ruling was upheld in a redetermination on July 30, 1979. Plaintiff appealed the redetermination to an appeal referee, who conducted a full evidentiary hearing on September 4, 1979. The referee issued findings and an order rejecting plaintiff's claim on January 4, 1980, finding that plaintiff's discharge was caused by her own misconduct in refusing instructions from Evans and Waterbury on May 10, 1979.

Plaintiff appealed the referee's decision to the Employment Security Board of Review, which affirmed the decision on April 15, 1981. Having exhausted all her administrative remedies, plaintiff then appealed her disqualification to the Wayne County, Michigan, Circuit Court, which affirmed the disqualification on March 23, 1982.

Plaintiff instituted this action in Wayne County Circuit Court on July 14, 1981. Defendant timely removed the case to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C.A. § 1332.

Plaintiff sought recovery against defendant on five theories: (1) that she was discharged on account of her race, in violation of the Elliott-Larsen Civil Rights Act, Mich. Comp.Laws Ann. § 37.2101 *et seq.;* (2) that she was discharged for pursuing rights granted to her by the Elliott-Larsen Civil Rights Act, *id.;* (3) that she was discharged in retaliation for requesting to see the contents of her personnel file, in violation of her rights under the Bullard-Plawecki Employee Right-to-Know Act, Mich. Comp.Laws Ann. § 423.501 *et seq.;* (4) that she was discharged without "just cause" in violation of an implied contract between

herself and defendant; and (5) that she suffered severe emotional distress as a result of defendant's intentional outrageous conduct.

On November 23, 1984, the jury found for defendant on plaintiff's claim of race discrimination. It found for plaintiff on the other four counts. The jury determined that plaintiff's lost earnings and benefits resulting from her discharge to the date of the verdict were $121,300. The jury further found plaintiff's compensatory damages for the intentional infliction of emotional distress and indignity and anguish because of the retaliatory discharge to be $25,000 prior to her discharge and $50,000 after her discharge.[1] On August 2, 1984, the District Court awarded plaintiff reinstatement, "front pay," [2] attorney's fees in the amount of $14,250, and costs in the amount of $591.80.

Defendant appeals the Court's decision on all four counts.

## I. PRECLUSION

■ Defendant argues first that the District Court erred in holding that the decision of the state court that plaintiff was discharged for misconduct did not preclude relitigation in this action that she was discharged for any other reason.[3] We find that plaintiff's claim that defendant fired

her without just cause is precluded, but that plaintiff's other claims are not.

The Full Faith and Credit Statute, 28 U.S.C.A. § 1738, requires all United States courts to afford the same full faith and credit to state court judgments that would apply in the state's own courts. The Supreme Court reemphasized the meaning of this statute in *Kremer, supra* note 3, when it stated that federal courts must apply state rules of preclusion in determining the effect of state court judgments. 465 U.S. at 481–82, 102 S.Ct. at 1897–98. Therefore, this Court must determine what preclusive effect, if any, Michigan state courts would give the decision of the Wayne County Circuit Court in subsequent claims by plaintiff regarding the cause of her termination.[4]

Michigan courts recognize the preclusive effect of final determinations by administrative agencies whether or not these determinations have been reviewed in a state court proceeding. *See Senior Accountants, Analysts & Appraisers Ass'n v. City of Detroit*, 399 Mich. 449, 249 N.W.2d 121 (1976). Under Michigan law, the doctrines of res judicata and collateral estoppel "apply to administrative determinations adjudicatory in nature particularly where ... a method of appeal is provided and it is clear that it was the legislative intention to make the determination final in the absence of an

---

1. The Court instructed the jury that plaintiff's damages for discharge without just cause are limited to lost wages and benefits. There was no evidence of any damages from the delay in seeing her personnel file.

2. The District Court determined that plaintiff should receive "front pay" in the amount of $10.00 per hour, based on a 40–hour work week, from the date of the order until the date that plaintiff was reinstated. This amount eventually totalled $3,000.

3. Plaintiff argues that res judicata and collateral estoppel are affirmative defenses and that by failing to raise them in its answer, defendant waived its right to assert these defenses. As defendant notes, however, the Supreme Court's decision in *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262, *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982), interpreting the

scope and effect of the Full Faith and Credit Statute, 28 U.S.C.A. § 1738, was not decided until after the defendant's answer was filed. Defendant included the preclusion issue in the final pre-trial order of May 25, 1982, and it made a motion in limine on the issue. Plaintiff did not object to defendant raising the issue in this manner and the District Court ruled on the merits. Had plaintiff raised the waiver issue in the District Court, the Court could have permitted defendant to amend its answer. Thus, we find that defendant adequately preserved this defense under the circumstances.

4. We note that state proceedings must "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897. The state proceedings here meet those requirements, and plaintiff does not contend that they do not.

appeal." *Roman Cleanser Co. v. Murphy*, 386 Mich. 698, 704 n. 5, 194 N.W.2d 704, 706 n. 5 (1972) (citation omitted).

The Michigan Supreme Court has adopted the test set forth in section 68 of the Restatement of the Law of Judgments as the applicable standard for collateral estoppel in Michigan: "Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between parties in a subsequent action on a different cause of action...." *Senior Accountants*, 399 Mich. at 458, 249 N.W.2d 121 (footnote omitted). Res judicata, on the other hand, precludes parties from raising in subsequent litigation all matters "which properly belonged to the subject of [previous] litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Gursten v. Kenney*, 375 Mich. 330, 335, 134 N.W.2d 764 (1965) (quoting *Henderson v. Henderson*, 3 Hare 100, 115 (67 Eng.Rep. 313)).

The MESC found in four levels of review, and the Wayne County Circuit Court affirmed, that plaintiff was discharged for "misconduct," an act which disqualifies a worker for full unemployment compensation benefits under the Michigan Employment Security Act, Mich.Comp.Laws Ann. § 421.1 *et seq.* ("ESA"). *See* Mich.Comp.

Laws Ann. § 421.29(1)(b).[5] Plaintiff now asserts that she was fired without "just cause" in violation of an implied employment agreement between her and defendant. In *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), the Michigan Supreme Court held that express or implied contracts to dismiss only for "just cause" were enforceable in the same manner as other contracts. The jury found that such a contract existed here and that defendant violated the contract by discharging plaintiff without just cause. We need not address defendant's contentions that these findings were not supported by the evidence, since we hold that the administrative determination that plaintiff was discharged for misconduct precludes her from relitigating the issue of whether she was discharged without just cause.

Michigan courts have not ruled on whether a MESC decision that an employee was discharged for misconduct can preclude the employee from filing a subsequent claim that she was discharged for another reason.[6] The Michigan Supreme Court decided an analogous issue in *Senior Accountants, supra*, however. The Court held that an unappealed determination by the Michigan Employment Relations Commission

---

5. The Michigan Supreme Court has defined "misconduct" for the purposes of the ESA as follows:

The term "misconduct" ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional or substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Carter v. Employment Sec. Comm'n*, 364 Mich. 538, 541, 111 N.W.2d 817, 819 (1961) (ellipses in original) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 260, 296 N.W. 636 (1941)).

6. We reject plaintiff's contention that Mich. Comp.Laws Ann. § 421.11(b)(1) prohibits the use of MESC decisions in subsequent court proceedings. We find that this section refers to

internal determinations. Section 421.11(b)(1) specifically states that such determinations "shall be held confidential and shall not be disclosed or open to public inspection other than to public employees in the course of their duties ...." The section does not refer to the use in subsequent court proceedings of decisions by MESC referees, the MESC Board of Review, or the decisions of the circuit court. Rather, "a writing prepared, owned, used in the possession of, or retained by" a referee, Mich. Comp.Laws Ann. § 421.33(3), or the review board, Mich.Comp.Laws Ann. § 421.36(3), in the course of an official function must be made available to the public in accordance with Mich. Comp.Laws Ann. §§ 15.231 to 15.246. In addition, section 15.241(1)(a) provides: "A state agency shall publish and make available to the public ... [f]inal orders or decisions in contested cases and the records on which they were made." Thus, no presumption of confidentiality, such as that found in section 421.11(b)(1), attaches to decisions by MESC referees or the review board.

("MERC") that the plaintiff was not entitled to "back pay" for a determined unfair labor practice operated as collateral estoppel to the subsequent maintenance of a suit in state court to recover the same amount as "damages" for breach of contract. The City of Detroit had ordered certain of its employees to increase their work week from 35 to 40 hours, but it did not increase their compensation. MERC found this to be an unfair labor practice, but denied "back pay" since the pay week was normally computed on a 40–hour week and the employees were not paid overtime for work between 35 and 40 hours in a normal week. The Court found that the issues of whether the employees were entitled to "back pay" or to "damages" both depended on whether the employment relationship between the City and the employees required such reimbursement. The Court noted that the questions of fact necessary for a determination of "damages" by the trial court were the same as those already determined by MERC when it determined that "back pay" was improper; thus, collateral estoppel prevented the employees from relitigating the issue. 399 Mich. at 458–59, 249 N.W.2d 121.

Likewise, we find that the same questions of fact are posed by plaintiff's assertion that she was fired without just cause as were determined by the MESC when it concluded that plaintiff was discharged for misconduct. Accordingly, the doctrine of collateral estoppel prevents plaintiff from relitigating this issue. However, plaintiff's claims of retaliatory discharge and intentional infliction of emotional distress do not involve facts or issues that were properly before the MESC and that were necessarily determined by its decision. The MESC is not empowered to determine whether defendant subjected plaintiff to intentionally outrageous conduct or whether defendant discharged plaintiff in retaliation for her assertion of her legal rights, nor would the MESC be able to provide plaintiff with any remedy if it made a positive finding on those claims. Plaintiff did not have a reason or an opportunity to fully litigate these issues in the administrative process and she therefore was not precluded from raising them in subsequent litigation.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The jury found for plaintiff on her claim that she was subjected to intentionally inflicted emotional distress prior to her discharge. We start by noting that the Michigan Supreme Court has not yet recognized intentional infliction of emotional distress as a tort in Michigan. In *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985), the Court noted that it had never ruled on whether intentional infliction of emotional distress had been adopted as a tort in Michigan. The Court refused to recognize the tort in *Roberts*, since it found that the plaintiff had not satisfied the threshold requirements to make a prima facie claim. 422 Mich. at 597, 374 N.W.2d 905. Since we find that plaintiff failed to make a sufficient showing of intentional infliction of emotional distress by defendant, we need not decide whether the Michigan Supreme Court would adopt the tort if faced with a substantiated claim.

Lower Michigan courts have adopted the tort of intentional infliction of emotional distress as set forth in section 46 of the Restatement (2d) of Torts (1965). *See, e.g., Warren v. June's Mobile Home Village & Sales, Inc.*, 66 Mich.App. 386, 390, 239 N.W.2d 380 (1976). Section 46 of the Restatement states in relevant part:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (2d) of Torts § 46 (1965). The Restatement defines this tort narrowly:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggrava-

tion which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* at § 46, comment d, *quoted in Warren,* 66 Mich.App. at 390–91, 239 N.W.2d 380. The defendant is not liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," Restatement (2d) of Torts § 46, comment d (1965), *quoted in Warren,* 66 Mich.App. at 391, 239 N.W.2d 380, nor is the defendant liable "where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence is certain to cause emotional distress." Restatement (2d) of Torts § 46, comment g (1965).

Plaintiff argues that her claim of intentional infliction of emotional distress arose primarily from the outrageous conduct of Evans. She asserts that Evans subjected the female staff to unwanted touching, sexual suggestions and homosexual advances, thus creating an intimidating and hostile work environment. We need not decide whether such behavior would be so outrageous as to constitute intentional infliction of emotional distress by defendant, since we find that the evidence does not show that plaintiff suffered actual emotional distress of sufficient magnitude to allow her to recover from defendant on this claim.

The Restatement notes that emotional distress

includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises.* Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe no reasonable man could be expected to endure it.*

Restatement (2d) of Torts 46, comment j (1965), *quoted in Roberts,* 422 Mich. at 608–09, 374 N.W.2d 905 (emphasis added). The plaintiffs in *Roberts* claimed that the defendant insurance company subjected them to intentional infliction of emotional distress by failing to pay a claim for injuries suffered by their daughter in an accident. The plaintiffs testified that the defendant's actions made them feel "kind of disappointed or mad" and "upset." 422 Mich. at 609–10, 374 N.W.2d 905. The Michigan Supreme Court found that the distress shown by the plaintiffs was insufficient as a matter of law to support their claim of intentional infliction of emotional distress:

Although anger may be an indicia of emotional distress, the reaction testified to does not even approach the level of emotional distress contemplated by the Restatement drafters in requiring that "no reasonable man could be expected to endure it." Rather, plaintiffs' anger is more consistent with that which normally accompanies the breach of a contractual obligation. There was no evidence of grief, depression, disruption of life style, or of treatment for anxiety or depression.

422 Mich. at 610–11, 374 N.W.2d 905.

Likewise, plaintiff's reactions were not of the level contemplated by the Restatement. Plaintiff testified that she would leave the work area when Evans began talking about sexual matters and that she was offended by such remarks. Plaintiff's husband testified that she would cry "quite a bit" when she got home from work and that her work situation was "getting to her." (Tr. 11/18, at 133.) He noted that plaintiff became more religious and attended church more often as a result of her problems with Evans. These reactions are consistent with those of any employee faced with an unhappy or unpleasant work situation. They are not of the severity which the Restatement intended to be com-

pensable. Plaintiff also testified that during the final altercation with Evans, on May 10, plaintiff was "crying" because she was "upset, angry, and embarrassed." (Tr. 11/6, at 111.) Plaintiff's husband testified that she "broke down and started crying" when she came home that day. (Tr. 11/18, at 134.) Although plaintiff may have suffered emotional distress on May 10, it was largely self-inflicted as a result of her refusal to show her work product to her supervisor. Defendant cannot be held liable for any emotional distress suffered by plaintiff as a result of an argument that ensued from her refusal to obey a legitimate instruction.

We therefore find that defendant was entitled to a directed verdict on plaintiff's claim that she was subjected to intentional infliction of emotional distress by defendant, since the claim was not supported by the evidence.[7]

### III. RETALIATORY DISCHARGE: PERSONNEL FILE

■ The Bullard-Plawecki Employee Right-to-Know Act, Mich.Comp.Laws Ann. § 423.501 *et seq.*, requires an employer in Michigan to give an employee access to the employee's personnel record upon written request. *See* Mich.Comp.Laws Ann. § 423.503. The jury was permitted to find that plaintiff was discharged in retaliation for her request to examine her personnel record. We find no violation of the statute, and no evidence that plaintiff was discharged for this reason.

Plaintiff failed to show that her discharge was in any way in retaliation for her request to see her personnel file. Plaintiff requested to see her personnel file on May 9, 1979. Waterbury told her that he needed to check with the home office about the proper procedure. He received instructions from the home office and plaintiff was given access to her file on May 23, 1979. The statute does not provide for any time period within which ac-

cess must be given after a request is made. Plaintiff points to no statements or actions by defendant that indicate that her suspension on May 10, 1979, and subsequent discharge, were in any way linked to her request to see her personnel file. Rather, she seems to rely merely on the timing of her request and her discharge as evidence that defendant improperly discharged her in retaliation for her request. We find that this timing alone, without further evidence of an improper motive or action on defendant's part and where other events intervene, is insufficient to support a finding that defendant's decision to discharge plaintiff was in retaliation for her request to review her personnel file.

### IV. RETALIATORY DISCHARGE: MCRC VISIT

■ The jury found that plaintiff had been discharged in retaliation for her visit to the MCRC. The Elliott-Larsen Civil Rights Act ("Elliott-Larsen Act" or "Act"), Mich.Comp.Laws Ann. § 37.2101 *et seq.*, prohibits discrimination or retaliation against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich.Comp.Laws Ann. § 37.-2701(a). Plaintiff visited the Michigan Department of Civil Rights on May 8, 1979. On May 9, 1979, Evans remarked to her, "I know you went down to the Civil Rights office." (Tr. 11/16, at 100.) Plaintiff was fired on May 10, 1979. Waterbury admitted that he knew of plaintiff's visit to the Civil Rights office, though he was uncertain whether he learned of it before or after her discharge.

We find that these facts raise a sufficient question to require a jury determination as to whether plaintiff's discharge was in retaliation for her assertion of her rights under the Elliott-Larsen Act. However, the relief granted to plaintiff on this issue

---

**7.** Because we find that plaintiff did not meet the threshold requirements of a claim of intentional infliction of emotional distress, we do not reach

the allegations made by defendant that the jury instructions on this matter were inadequate.

was not segregated from her claim of retaliatory discharge for requesting to see her personnel file and her claim of unjust discharge. In addition, we find that the District Court instructed the jury incorrectly as to the burden of proof applicable in cases where an employee claims she was discharged in retaliation for pursuing her rights under the Elliott-Larsen Act. Therefore, we remand this issue to the District Court for a new trial to determine whether plaintiff's visit to the MCRC was a significant factor in defendant's decision to discharge her, and to determine the relief due plaintiff, if any.

Defendant alleged two errors in the jury instructions on this claim. Although it appears that defendant may not have adequately preserved those issues for appeal, we nonetheless address them to ensure that the proper instructions are given on remand.

■ First, the District Court's instruction stated that the jury should find for plaintiff if they found that there was "a causal link between the participation in protected activities and the discharge." (Tr. 11/23, at 24.) Plaintiff claims that this jury instruction was correct. We disagree. The "causal link" language comes from a recent Michigan Court of Appeals case. *See Kocenda v. Detroit Edison Co.,* 139 Mich.App. 721, 363 N.W.2d 20 (1984). The troublesome language in *Kocenda* states:

> Finally, we decline defendant's invitation to make proof of actual knowledge of plaintiff's having filed a civil rights complaint an element of a retaliation action. Plaintiffs [sic] need only establish a causal link between participation in the protected activity and the adverse employment treatment complained of.

139 Mich.App. at 726, 363 N.W.2d 20. A fair reading of the case reveals that the Court refused to require proof of "actual knowledge" of the protected activity as an element of a prima facie claim of retaliatory discharge. The *Kocenda* Court was not addressing the relationship between the plaintiff's participation in protected activity and the retaliatory discharge. Thus, we

find this authority to be inapplicable to the issue at hand.

Defendant argues that the proper standard is a "but for" test; *i.e.,* that the plaintiff must show that she would not have been discharged "but for" her participation in protected conduct. Michigan courts have not adopted this standard. We find that a plaintiff claiming retaliatory discharge under the Elliott-Larsen Act must show that her participation in protected activity was a "significant factor" in her employer's decision to discharge her.

We start our analysis by noting that Michigan courts have never ruled on the burden of proof applicable in cases involving employees claiming that they were discharged in retaliation for their participation in activity protected under the Elliott-Larsen Act. The courts have imposed standards in analogous cases, however, and we find those cases to be relevant here. In *Goins v. Ford Motor Co.,* 131 Mich.App. 185, 347 N.W.2d 184 (1983), the Michigan Court of Appeals, faced with an employee claiming that he had been unlawfully discharged because he had filed a previous workers' compensation claim with a former employer, stated:

> While there is no Michigan case law dispositive on this issue, we find cases involving wrongful discharges in other contexts helpful. In *Gallaway v Chrysler Corp,* 105 Mich App 1, 5–6 [306 N.W.2d 368]; *lv den* 413 Mich 853 (1982), an age discrimination suit, this Court held that a plaintiff need only show that the plaintiff's age was one significant factor in plaintiff's discharge; plaintiff need not prove that age was the sole, critical factor causing discharge. See also *Adama v Doehler-Jarvis Div of NL Industries, Inc,* 115 Mich App 82, 89–90; 320 NW2d 298 (1982).
>
> Also providing some guidance is *Smith v Atlas Off-Shore Boat Service, Inc,* 653 F2d 1057 (CA 5, 1981). That case involved a seaman's exercise of his legal right to file a personal injury suit against his employer and his claimed retaliatory discharge for doing so. The court in

*Smith* adopted a "substantial factor" test as plaintiff's burden of proof. *Id.,* p 1063.

... Where, as here, the plaintiff claims that he or she was unlawfully discharged for filing a workers' compensation claim, plaintiff has the burden of proving that the filing of the workers' compensation claim was a significant factor. in defendant's decision to discharge the plaintiff. 131 Mich.App. at 197–98, 347 N.W.2d 184.

We find the *Goins* Court's analysis persuasive and adopt its "significant factor" standard in this case. Our conclusion that this is the appropriate standard in retaliatory discharge cases such as the one presented here is further buttressed by Michigan Standard Jury Instruction 2d 105.02, which recites the burden of proof applicable in disparate treatment cases under the Elliott-Larsen Act. The instruction states:

The plaintiff must prove that [s]he was discriminated against because of [race].

The discrimination must have been intentional. It cannot have occurred by accident. Intentional discrimination means that one of the motives or reasons for plaintiff's [discharge] was [race]. [Race] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to [discharge] the plaintiff.

Although Michigan does not have a standard jury instruction for retaliatory discharges for engaging in activity protected under the Elliott-Larsen Act, we find the above instruction sufficiently analogous to support our holding.

Accordingly, we hold that plaintiffs seeking to show that they were discharged in retaliation for their opposition to violations of the Elliott-Larsen Act or for their participation in activities protected under the Act must show that their opposition or participation was a "significant factor" leading to their discharge. We note that the "significant factor" standard imposes a more lenient standard than the "but for" test urged by defendant, but that it requires a

showing of more than a "causal link." A factor can be a "cause" without being "significant." Only the latter is sufficient to show retaliatory discharge.

■ Next, we address defendant's contention that the jury instructions did not adequately define "protected activity" for the purposes of the Elliott-Larsen Act. The instructions stated:

In Michigan, the Elliot-Larsen Civil Rights Law provides that it is illegal for an employer to retaliate or discriminate against a person because a person had opposed a violation of this Act, or because the person has made a charge, filed a complaint, or participated in an investigation, proceeding, or hearing under the Elliott-Larsen Civil Rights Act.

(Tr. 11/23, at 24.)

Defendant argues that plaintiff's visit was protected only if it was a manifestation of her actual intent to engage in protected activity, *i.e.,* to file a charge. Plaintiff did not file a charge with the MCRC until after she was discharged, nor did she indicate to anyone before her discharge that she intended to file a charge. Although defendant concedes that certain activity can be protected under the Act even though it is not specifically described in the Act, it argues that that activity must manifest plaintiff's actual intent to engage in protected activity. Thus, defendant argues that an element of plaintiff's claim of retaliatory discharge is a showing that she intended to file a charge when she visited the MCRC. We disagree.

The Michigan courts have not discussed whether a visit to an MCRC office can be a protected activity. When construing claims under the Elliott-Larsen Act, however, Michigan courts often look to federal decisions construing parallel provisions of federal legislation, *i.e.,* the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* ("Title VII"). *See Melchi v. Burns Int'l Sec. Serv., Inc.,* 597 F.Supp. 575, 581 (E.D.Mich. 1984). In construing 42 U.S.C.A. § 2000e–3(a), which is virtually identical to the lan-

guage of the Elliott-Larsen Act,[8] the Ninth Circuit found "no legal distinction ... between the filing of a charge which is clearly protected ... and threatening to file a charge." *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n. 3 (9th Cir.1982).

We see no reason to distinguish between a visit to a government agency to inquire about filing a charge and a threat to file a charge. In both instances, the focus is not on whether the employee intends to follow through with filing the charge, but rather on whether the employer's decision to discharge was motivated by an improper desire to retaliate against an employee for pursuing rights granted by the Act. Thus, we find that a visit to the MCRC to inquire about rights granted under the Act is a protected activity. The question to be answered on remand is whether defendant did in fact retaliate against plaintiff because of her visit by discharging her and, if so, whether that retaliation was a significant factor in defendant's decision to discharge plaintiff.

We remand for a new trial on this issue consistent with our findings above.[9]

### V.

Accordingly, we REVERSE the District Court's judgment for plaintiff on her claims that she was the victim of intentional infliction of emotional distress, that she was discharged without just cause, and that she was discharged in retaliation for her request to review her personnel file. The case is REMANDED for further proceedings consistent with this opinion on the

claim that plaintiff was discharged in violation of the Elliott-Larsen Civil Rights Act for pursuing rights granted to her under that Act.

---

**8.** 42 U.S.C.A. § 2000e–3(a) states:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**9.** Defendant also argued on appeal that the District Court erred in admitting certain testimony regarding Evans' sexual activities. Since the only issue left on remand is plaintiff's claim of

retaliatory discharge in violation of the Elliot-Larsen Civil Rights Act, and the challenged testimony can have no bearing on that subject, we need not reach this issue. Likewise, we do not rule on whether the admission of expert testimony by a linguist that white people in general often perceive black people who speak in black vernacular as generally inferior and less competent was proper. The jury found for defendant on plaintiff's claim of race discrimination, so defendant's rights were not adversely affected by this testimony. Moreover, the testimony is not relevant to the one issue remaining on remand.